HENRY TOZER, by Guardian, etc., Respondent, *v.* THE NEW YORK CENTRAL and HUDSON RIVER RAILROAD COMPANY, Appellant.

*Court of Appeals, March* 8, 1887.

Reversing same case, 38 Hun, 100.

*Evidence. Ulterior consequences.*—In an action to recover damages for personal injuries alleged to have been caused by defendant's negligence, testimony as to the ulterior consequences, which may ensue or be apprehended from the injuries received by the plaintiff, is inadmissible, unless there is such a degree of probability of their occurring as amounts to a reasonable certainty that they will result from the original injury.

Appeal from a judgment of the general term of the supreme court, affirming a judgment entered upon a verdict, and from an order of the general term affirming a special term order denying a motion for a new trial made on a case and exceptions.

The facts and opinion of the general term are as follows:

"In the evening of the 17th of June, 1881, the plaintiff, then at the age of nine years, and his brother aged seventeen years, in a wagon drawn by a horse, driven by the latter, were proceeding southerly in Cemetery street, in the village of Batavia, across the track of the defendant's railroad, and were struck by the tender of what was known as a pusher locomotive engine, which was somewhat rapidly moving backwards on one of the tracks. The plaintiff was seriously injured and his brother killed. There were at that place five parallel tracks of the defendant's road, and the accident occurred on the fourth track from the north.

"The evidence justified the conclusion that the injury was

occasioned by the negligence of the defendant, and without fault on the part of the plaintiff.   The plaintiff recovered a verdict of $8,000.

" The main questions on appeal arise on exceptions taken to the admission of testimony of witnesses.   It appeared that the plaintiff was injured in the head, right leg, right arm and elsewhere ; that the injury to his brain was such that he was utterly unconscious for three weeks after it occurred and semi-unconscious for three weeks after that, and for weeks thereafter his talk was confined to monosyllables ; that the injury to the brain was of a permanent character, and such as to impair his memory and hearing ; that before the injury he was fond of his books, attended school, learned rapidly and was a good scholar, and had a good memory ; that since the injury he has suffered with roaring noises in his head, impairment of vision, cannot learn or remember his lessons, and study causes an uncomfortable feeling in his head ; that since the injury he was fretful, nervous and easily excited, and was not so before.

" The evidence apparently had relation to his condition up to the time of the trial, which was in June, 1882, a year after the injury.   A doctor was asked to state whether there was a probability that some disease of the brain, even after the lapse of a year from such an injury and apparent recovery, would carry off the person so injured, and he answered that such things do occur.   He is then asked :   ' State whether it is probable they may occur in this case, or whether you would expect that to occur or whether there would be any more than a remote liability,' and he answered : ' There is a liability of their occurring.'

" The defendant's objection to the answer being received and overruled, exception was taken.

" He is then asked : ' State whether there is a probability from such an injury of disease of the brain manifesting itself at a remote period, years after the injury, and if so, tell us what you know on that subject.'   He answered :

'I do not think there is a probability of its occurring. It would be more likely to occur than as though he hadn't received the injury.' Q. State whether ordinarily this irritability and nervousness after a lapse of a year might assume a progressive form and grow worse instead of better? A. That would be rather difficult for me to say. Taking into consideration the boy's age and his natural inherited qualities, he probably will improve somewhat, and perhaps entirely recover. To the last two questions objections were respectively made, overruled and exceptions taken. He was re-examined by plaintiff, as follows: Q. You may state the probability, and if there is any, of insanity following injuries to the head of the character you have described? A. I wouldn't want to answer the question that way, and say it was probable, because a person had injury to the brain, that he would became insane. I say they may become insane from injury to the brain. Q. State for what period of time such a thing may be apprehended. A. There is no period of time. Q. Does such a thing ever follow an apparently complete recovery? A. I think such cases are recorded. I never have had any occur in my practice. It is generally conceded, I think, by physicians, that such things may occur. Objections and exceptions were taken to the reception of answers to those several questions. Another doctor testified that if anything should result from the injury to the brain of the plaintiff it would indicate itself by loss of memory and periods of undue excitement and impairment of vision to some extent, and possibly the hearing. Q. State what you think would be the probable result? A. I don't know but that covered the ground. I don't know that anything more might be expected, and probably happened. Q. You may state whether there may be an apparent complete recovery when there is not an absolute recovery. A. I can say there can be an apparent freedom of symptoms at one particular time, and then they may be re-developed at an interval. Q. They may be re-

developed after years? A. Possibly. The defendant's objections to those several questions were overruled and exception taken. The court at general term said: "It is contended by the defendant's counsel that much of this evidence offered and received was incompetent because it did not have the requisite character of certainty or even of probability in respect to future results of the injuries received by the plaintiff, and that it may have had the effect to enhance the damages found by the jury. The plaintiff had the right to prove damages, both past and future, as the result of the injuries suffered by the plaintiff, but the evidence on that subject must be such as may advise of the necessary probable and expected consequences of the condition in which the injury placed the plaintiff as distinguished from those that may be deemed merely possible or speculative. Strohm *v.* N. Y., L. E. & W. R. R. Co., 96 N. Y. 305.

". There may be results which naturally follow physical injuries, and may reasonably be apprehended from the condition occasioned by them. The judgment of men skilled in medical science is necessarily resorted to, and competent as evidence in that respect, and the purpose of that referred to was to show the extent of the injuries and their effect upon his future health and condition. So far as the questions put to those witnesses were competent, there was no error in permitting them to answer. The competency of the evidence given in response to them was a question to be presented by motion to strike out, or upon request to charge. The inquiry of the witnesses for the probable consequences of the injuries, we think, was competent, and that was the character of most of them to which objection was taken. That is one method of expressing what may reasonably be expected to follow as the natural effect of the causes upon which the judgment called for is predicated, and furnishes evidence as definite in quality as ordinarily is given by opinions of the future consequences of brain and

other physical injuries. And while the entire correctness of opinions may not be demonstrable, and they may not have the merit of absolute certainty, they constitute the best and only means of furnishing proof on the subject for the consideration of the jury who are to give such damages for the future effects of the injuries as are reasonably certain. Buel *v.* N. Y. Central R. R. Co., 31 N. Y. 314; Filer *v.* N. Y. Central R. R. Co., 49 id. 42–45.

The following questions considered alone and independent of any other examination of the witnesses would seem to be incompetent: "Does such a thing ever follow an apparently complete recovery?" You may state whether there may be an apparent complete recovery when there is not an absolute recovery?" "May they (symptoms) be redeveloped after years?" These questions called for a possible condition which might follow injuries and appear in future as a consequence of them. They were not in terms applied to the plaintiff or his injuries, but were, in effect, inquiries whether sometimes there was or not a deceptive condition of recovery followed by a reappearance of results of previous injury. The evidence given in response to those questions did not furnish any legitimate information ; and treating it as incompetent, the question arises whether the objections were such as to produce error. The objections taken were general. As a rule the grounds must be specific, to which there are exceptions, and it is contended that these come within the latter. It was competent to take opinions of the witnesses on the subject of the extent and future consequences of the injuries in question. The witnesses, as will be assumed, were competent to express them, and the plaintiff might have proved, if he could, that the nature of the injuries received by him were permanent in character, and that his apparent recovery could not be real or substantial. While the opinion asked for was irrelevant, it was not incompetent to call for the judgment of the witnesses relating to the effect which would follow his in-

juries. It cannot, therefore, be said that the objection could not have been obviated if the specific ground of objection had been stated. Levin *v.* Russell, 42 N. Y. 251, 255–6; Daly *v.* Byrne, 77 id. 182–187; *In re* Crosby *v.* Day, 81 id. 242–245; Ward *v.* Kilpatrick, 85 id. 414–417. Nor can it be said that the evidence was in its essential nature so incompetent that no question was admissible on the subject involved in it as relating to the plaintiff's condidition. The difficulty was in the form of the question, and in calling for a speculative opinion rather than one based upon his case applicable to him and to the consequences which, in the judgment of the witnesses, would follow. These objections do not come within the exception to the general rule, which requires a specific ground of objection to support error. Bergmann *v.* Jones, 94 N. Y. 51; Quimby *v.* Strauss, 90 id. 664; Stevens *v.* Brennan, 79 id. 255; Tooley *v.* Bacon, 70 id. 34. The same suggestions are applicable to the other objections taken to the admissibility of evidence.

*George C. Greene,* for appellant.

*Wm. C. Watson,* for respondent.

PER CURIAM.—This case falls within our decision in Strohm *v.* N. Y., L. E. & W. R. R. Co., 96 N. Y. 305. The testimony which was received under exception, as to the ulterior consequences which might ensue or be apprehended from the injuries received by the plaintiff, was quite as objectionable as that for the reception of which the judgment in the case cited was reversed.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

All concur.